# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| EVERETT HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-CV-1056 RWS |
| | ) | |
| ONTERIO SHEPPARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of self-represented plaintiff Everett Henderson's motion for leave to commence this civil action without prepayment of the required filing fee. Upon consideration of the financial information provided with the motion, the Court finds plaintiff is financially unable to pay any portion of the filing fee. As a result, plaintiff will be granted leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. Additionally, after reviewing plaintiff's complaint, the Court will partially dismiss the amended complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the amended complaint. *See* 28 U.S.C. § 1915(e)(2).

### Standard of Review

This Court is required to review a complaint filed in forma pauperis and must dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may

be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S at 556). Although a plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court liberally construes complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Liberal construction" means that "if the essence

of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

## Plaintiff's NGRI Background

Plaintiff Everett Henderson is currently confined at the St. Louis Psychiatric Rehabilitation Center (SLPRC) in St. Louis, Missouri, pursuant to a plea of Not Guilty by Reason of Mental Disease or Defect (NGRI). *See State v. Henderson*, No. 22051-03201 (22nd Jud. Circuit, State of Mo.). On September 24, 2005, a criminal complaint was issued charging plaintiff with fourteen (14) counts, including: (1) 1st degree assault of a law enforcement officer; (2) two counts of armed criminal action; (3) 2nd degree assault on a law enforcement officer; (4) two counts of kidnapping; (5) five counts of unlawful use of a weapon (exhibiting); (6) resisting arrest; (7) violating of an order of protection; and (8) assault in the first degree. The presiding criminal judge requested a mental examination in the case on October 11, 2005. A

grand jury indictment was returned on November 9, 2005, with the same fourteen (14) counts as in the complaint.

On or about October 11, 2005, plaintiff, though counsel, filed a notice of NGRI. In the Court's pretrial psychiatric examination, dated July 17, 2006, and filed by Dr. Richard Scott, plaintiff was diagnosed as having Bi-Polar Disorder I, Manic, with Psychotic Features. Dr. Scott later examined and evaluated plaintiff pursuant to Mo.Rev.Stat. Chapter 552, and found plaintiff was incapable of appreciating the nature, quality or wrongfulness of his conduct or conforming his conduct to the requirements of the law at the time of the incident which led to the pending charges. On June 12, 2006, the Court reassigned the matter to Division 25 for further proceedings. *See State v. Henderson*, No. 22051-03201 (22nd Judicial Circuit, St. Louis City Court). On June 23, 2006, plaintiff entered a plea of not guilty by reason of insanity (NGRI), and the matter was set for a commitment hearing on July 6, 2006. *See, e.g.,* Petitioner's Brief in *Henderson v. Javois*, No 2022-CC00485 (22nd Jud. Cir., State of Mo.).

On July 19, 2006, a petition for appointment of guardian and conservatorship was filed on behalf of plaintiff. *See In re Henderson*, No. 0622-PR00747 (22nd Jud. Cir., State of Mo.). The matter was voluntarily dismissed on June 19, 2007. *Id.*

On February 14, 2020, plaintiff, through counsel, filed a state application for writ of habeas corpus in St. Louis City seeking release from custody. *Henderson v.*

4

*Javois*, No 2022-CC00485 (22ⁿᵈ Jud. Cir., State of Mo.). In his application for writ, petitioner asserted that his NGRI plea was void due to a failure by counsel to adhere to a notice that a defendant has no other defenses to be filed. Thus, plaintiff argued he was denied effective assistance of counsel at trial. *Id.*

On March 10, 2023, plaintiff, filing pro se, filed a motion for leave to file an amended petition. He seeks release from release from confinement pursuant to Missouri Revised Statute § 632.435 arguing that he no longer suffers from a mental disease or defect.

On May 8, 2023, counsel for plaintiff filed proposed findings of fact and conclusions of law with the Circuit Court relative to ineffective assistance of counsel claim. Counsel did not address petitioner's pro se release from confinement claim filed on March 10, 2023.

On May 22, 2023, respondent sought additional time, until June 2, 2023, to file a proposed order.

## Plaintiff's Procedural Background in this Court

On March 25, 2022, plaintiff filed his first action in this Court in *Henderson v. Missouri Department of Mental Health*, No. 4:22-cv-360 RLW (E.D.Mo). He filed the action pursuant to 42 U.S.C. § 1983 against eighteen (18) individual defendants and the Missouri Department of Mental Health. Plaintiff filed two separate documents with the Court which appeared to be pleadings. *Id.*

The first document was titled, "Prisoner Civil Rights Complaint Form," and was ten (10) pages, typewritten. The second document was titled, "Complaint," and it was thirty-one (31) pages typewritten. Neither document was on a court-provided form, as required by Eastern District of Missouri Local Rule 2.06.

### A. The Claims in Plaintiff's "Prisoner Civil Rights Complaint Form" in *Henderson v. Missouri Department of Mental Health*, No. 4:22-cv-360 RLW (E.D.Mo)

Plaintiff stated in his "Prisoner Civil Rights Complaint Form" in *Henderson v. Missouri Department of Mental Health*, No. 4:22-cv-360 RLW (E.D.Mo) that he was forcibly medicated in February of 2011 "within days of [his] arrival" at SLPRC. He claimed that the actions of the Missouri Department of Mental Health and the eighteen (18) doctors, nurses and mental health professionals named in the complaint violated both the U.S. Constitution and Missouri Department of Mental Health Operating Regulation (DOR) 4.152 by forcibly medicating him. The allegations in plaintiff's "Prisoner Civil Rights Complaint Form," related to dates of involuntary medication between February of 2011 and November 2015. Plaintiff also claimed that his legal paperwork was removed from his possession and telephones were taken away to impede him from contacting an attorney. Plaintiff additionally asserted that when he grieved the forced medication incidents, his grievances were not responded to, or not responded to in a timely manner.

In addition, in plaintiff's "Prisoner Civil Rights Complaint Form," plaintiff asserted that in October of 2015, he had an altercation with an SLPRC employee, Onterio Sheppard. Plaintiff stated that he was falsely accused of punching Sheppard and, as a result, charge nurse James Hanson called an "all available," which led to plaintiff being tied down with ankle and wrist cuffs and forcibly injected with psychotropic drugs that "left him disoriented for almost a week." Plaintiff claimed that after the incident with Sheppard, he contested being given the drug Haldol. However, Dr. Hayreh, the acting psychiatrist, wrote to plaintiff on October 13, 2015, and indicated that he did not believe that he had a realistic chance of earning discharge without a mood-stabilizing drug.

Plaintiff interpreted the letter as intimidation to comply with the forced medication. He claimed in his "Prisoner Civil Rights Complaint Form" that when the "intimidation" did not work, Dr. Hayreh "colluded" with Amy Ramirez (Psychologist) and Roy Wilson (Psychiatrist) to have the requisite two psychiatrists agree to forced drugging in compliance with the language of DOR 4.152. Plaintiff alleged in the "Prisoner Civil Rights Complaint Form" that Ramirez and Wilson were not properly credentialed to provide a second opinion under DOR 4.152, thus, he appealed the decision to forcibly medicate. Plaintiff included with his "Prisoner Civil Rights Complaint Form" a November 9, 2015, letter from the Chief Medical Director for Adult Services for the Department of Mental Health who indicated that

the Missouri Department of Mental Health Operating Regulation 4.152 was not followed.[1]

## B. The Claims in Plaintiff's "Complaint" in *Henderson v. Missouri Department of Mental Health*, No. 4:22-cv-360 RLW (E.D.Mo)

In plaintiff's "Complaint," attached to plaintiff's "Prisoner Civil Rights Complaint Form," in *Henderson v. Missouri Department of Mental Health*, No. 4:22-cv-360 RLW (E.D.Mo), plaintiff asserted that defendants forcibly medicated him in 2011 at SLPRC. The first seventy-one (71) paragraphs of the "Complaint" mirrored the allegations of the "Prisoner Civil Rights Complaint Form." However, plaintiff also included in the "Complaint" an additional six (6) pages of "Counts" which appeared to include claims brought pursuant to 42 U.S.C. § 1983: (1) violation of the Eighth Amendment and the right to be free from bodily intrusion by defendants McCoy, Wilson, Todd, Carter and John/Jane Does in February of 2011 as a result of forced drugging (Count 1); (2) violation of the Eighth Amendment and the right to be free from bodily intrusion by defendants Shepperd, Hanson, Wilson, Hayreh, Ramirez and John/Jane Does in October 2015 as a result of forced drugging (Count II); (3) violation of plaintiff's Fourteenth Amendment substantive and procedural due process rights by defendants McCoy, Wilson, Todd, Carter and John/Jane Does in February of 2011 as a result of forced drugging (Counts III and

---

[1]The last date listed regarding the forced medication in plaintiff's "Prisoner Civil Rights Complaint Form" was 2015. However, he indicated at the end of his complaint form that the "wrongs alleged in the complaint [were] continuing to occur at the present time."

IV); (4) violation of plaintiff's Fourteenth Amendment substantive and procedural due process rights by defendants Shepperd, Hanson, Wilson, Hayreh, Ramirez and John/Jane Does in October of 2015 as a result of forced drugging (Counts V and VI); (5) violation of plaintiff's Fourteenth Amendment due process rights by defendants Javois and Wilson based on "state created danger of an institutional culture of covering up and using illegal forced druggings" (Count VII); (6) violation of the Eighth Amendment, failure to train employees on constitutional standards regarding forced drugging (Count VIII); (7) defendants Javois and Wilson's constitutionally inadequate policies, procedures customs and practices caused plaintiff's injuries and they failed to protect plaintiff from harm and failed to intervene (Count IX); and (8) violation of plaintiff's Fourteenth Amendment due process right to be released from confinement by defendants Javois and Wilson (Count X).

### C. The Court's Instructions on Amending the Complaint in *Henderson v. Missouri Department of Mental Health*, No. 4:22-cv-360 RLW (E.D.Mo)

Because plaintiff's pleading contained numerous deficiencies and was not on a court-provided form, by Memorandum and Order issued on September 2, 2022 in *Henderson v. Missouri Department of Mental Health*, No. 4:22-cv-360 RLW (E.D.Mo), the Court Ordered plaintiff to amend his pleading on a court-provided form no later than October 3, 2022. Plaintiff was provided specific instructions relating to the amendment of his pleading. For example, the Court ordered plaintiff to separate his 2011 claims from his 2015 claims in two separate lawsuits. Plaintiff

was instructed to bring his claims relating to the 2011 events in the case of in *Henderson v. Missouri Department of Mental Health*, No. 4:22-cv-360 RLW (E.D.Mo), and he was instructed to file a new lawsuit relating to the 2015 events. The instant action relates to the 2015 events.

## The Complaint

Plaintiff Everett Henderson, a civil detainee at SLPRC filed the instant action on March 25, 2022, relating to the 2015 events first referenced in *Henderson v. Missouri Department of Mental Health*, No. 4:22-cv-360 RLW (E.D.Mo).

He brings his amended complaint pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights and he names the following entities and individuals as defendants in this action: Missouri Department of Mental Health (DMH); SLPRC[2]; Onterio Sheppard (Psychiatric Technician); Dr. Jane Doe (Psychiatrist); Davinder Hayreh (Psychiatrist); Amy Ramirez (Therapist); Roy Wilson (Medical Director); Laurent Javois (Chief Executive Officer); and Felix Vincenze (former Chief Organizational Officer). Plaintiff sues defendants in their official and individual capacities.

Plaintiff asserts that on a weekend in "early October" of 2015, he was "assaulted" by defendant Onterio Sheppard. He claims that Sheppard tied him to a

---

[2]Plaintiff also refers to this entity as the Forensic Treatment Center South.

bed with wrist and ankle cuffs and at the orders of Dr. Jane Doe, a Psychiatrist at SLPRC, Sheppard forcibly injected him with a "cocktail of psychotropic drugs." This apparently happened on October 3, 2015.  *See* Ex. 2. Plaintiff asserts that defendant Jane Doe stood over him several hours later and told him that if he wanted to be uncuffed from the bed he would need to agree to be given another injection.

Plaintiff claims that he was later falsely accused of punching Sheppard. Another psychiatric technician at SLPRC, Brandon Craft, clarified with defendant Hayreh what had occurred, but plaintiff claims the records were not changed "to reflect the truth."

Plaintiff alleges in his complaint that on October 5, 2015, defendant Hayreh sought an order to involuntarily drug him. He has attached a letter, dated June 15, 2015, as evidence of this process.[3] The letter states:

> I have reviewed your records and discussed your behavior in the last 96 hours with other SLPRC staff. I note that you have not been adherent with prescribed Zyprexa, Depakote or Haloperidol, except when administered PRN as an injection. The ward staff and I have observed that you continue to become more manic and psychotic, and that you have subsequently behaved erratically, aggressively and without due regard for your safety or the safety of others.
>
> For this reason, I am soliciting a second opinion to start the involuntary medication process. At this time, I am requesting that Dr. Wilson (SLPRC Medical Director) assign another psychiatrist to assess you for the appropriateness of involuntary injected medications to treat your mania. Please be aware that you can insist on the interview with the

---

[3]Pursuant to Federal Rule of Civil Procedure 10(c), a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.

assigned psychiatrist be audiotaped. You are entitled to have assistance from an independent lay advisor during the second opinion process. If would like a lay advisor, please let staff know and you will be provided with one.

If you wish to, you may appeal the second opinion in writing to the SLPRC medical director (Dr. Wilson), but you must do so within 5 working days of the second opinion being completed. If you further disagree with Dr. Wilson's opinion, you may appeal to the Department of Mental Health Medical Director (or his designee) but this must happen within 5 working days of Dr. Wilson giving his verdict on your initial appeal.

At present, I believe that you should be treated with Haldol (haloperidol). It is indicated for Bipolar Mania, you have tolerated it without undue side effects, and it can be administered in a range of ways. I will also be prescribing Depakote (valproic acid) as a mood stabilizer which would be an agent you could take indefinitely. There are a number of other alternatives to both haloperidol and valproic acid. If I decide that any of these other medications is preferable, I will notify you verbally. Both of these medications come with a range of side effects. Haloperidol can cause sedation, dry mouth, tremors and a condition called Neuroleptic Malignant Syndrome (among other side effects). Valproic acid can cause sedation, changes in liver function and changes in your blood cell counts (among other side effects). I believe these are useful agents for your condition, and that treatment with these represents the least restrictive alternative for you at this time.

My hope, as always, is that you will find it reasonable to start taking your prescribed medications without the use of force. However, until then, it is my medical opinion that your health and wellbeing depend on our administering medicines over your objections.

Plaintiff wrote a letter, "To Whom It May Concern," on October 8, 2015, documenting the forced injections of the prior week, as well as what he believed the debilitating effects of the drug Haldol were on his system. He asserts that despite his letter, Hayreh pleaded with him to take a dose of any anti-depressant, mood stabilizer

or anti-psychotic drug. According to plaintiff, Hayreh also opined that DMH had no legal justification to hold him as long as he had been involuntarily committed. Hayreh allegedly told plaintiff that he wanted to continue to move forward with his discharge but would not be able to do so unless he agreed to take a neuroleptic drug.

Plaintiff asserts that Hayreh pleaded with him for days to take the medication, but plaintiff refused. Finally, Hayreh "colluded with Roy Wilson and Amy Ramirez to get a forced medication order." On October 9, 2015, plaintiff was interviewed by Ramirez. On October 13, 2015, Hayreh sent plaintiff a letter that recommended he receive involuntary psychotropic medications. The letter informed plaintiff of his ability to appeal the recommendation and delay the involuntary treatment. Plaintiff appealed the decision to Dr. Wilson, on the basis that Amy Ramirez was not a licensed psychiatrist; however, Dr. Wilson denied the appeal.

Plaintiff appealed Dr. Wilson's decision  to the Central Office of the Department Medical Director. Plaintiff has included a copy of a letter written by the Chief Medical Director of Adult Services, Angeline Stanislaus, on November 9, 2015, to Staff Attorney Kiara Drake from the Missouri Protection and Advocacy Services. Dr. Stanislaus states:

> I received the Involuntary medication appeal of Mr. Everett Henderson dated November 6, 2015. I note the three specific issues that were raised in the appeal letter, and I am in agreement that the DMH DOR 4. 152 procedure for involuntary medication administration was not followed. I contracted Mr. Roy Wilson, Medical Director at St. Louis Psychiatric and Rehabilitation Center to discuss these issues. He agreed to

reevaluate Mr. Everett Henderson to determine if he meets criteria for Involuntary psychotropic medication administration as per the DMH DOR and to provide documentation as outlined in the DOR. Also if the facility decided to proceed with involuntary psychotropic medication procedure, a psychiatrist will provide the second opinion psychiatric evaluation as outlined in the DOR.

Plaintiff claims, in conclusory manner, that defendants Vincenze and Javois "created an environment where psychiatric abuse is allowed to happen explicitly, encouraged forced druggings and were complicit" in the 2015 incident. He does not, however, provide any facts relative to an alleged personal involvement of defendants Vincenze and Javois.

Last, plaintiff alleges that the State of Missouri created a danger by encouraging employees to act in a criminal manner by failing to train and supervise employees concerning forcible medication.

For relief in this action plaintiff seeks discharge from the custody of the Department of Mental Health as well as damages.

## Discussion

### A. Claims against the Missouri Department of Mental Health and St. Louis Psychiatric Center

Plaintiff has named the Missouri Department of Mental Health and the St. Louis Psychiatric Center[4] as defendants in this action. Because these claims are

---

[4]The St. Louis Psychiatric Center is a State-owned mental health agency, operated by the Missouri Department of Mental Health.

brought against departments of the State of Missouri, they are treated as being made against the state itself. These claims fail for two reasons.

First, 42 U.S.C. § 1983 "provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). As the State of Missouri is not a "person," plaintiff is missing an essential element of a § 1983 claim. Therefore, the claims against the Missouri Department of Mental Health and the St. Louis Psychiatric Center are subject to dismissal.

Second, plaintiff's claims against these entities, and therefore claims against the State of Missouri, are barred by the doctrine of sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state

from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.,* 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment").

The immunity provided by the Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.,* 495 F.3d 591, 594 (8th Cir. 2007) (stating that district court erred in allowing plaintiff to proceed against state university for injunctive relief, and remanding matter to district court for dismissal).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). The first exception is when Congress has exercised its power under § 5 of the Fourteenth Amendment to override a state's immunity through clear and unmistakable language. *Id.*, *Will*, 491 U.S. at 66.  The second exception is when a state waives its immunity to suit in federal court. *Will*, 491 at 66. Neither exception is applicable in this case.

The first exception is inapplicable because 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe ... that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception is also inapplicable because the State of Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles ... within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property").

In short, sovereign immunity prevents plaintiff from suing the State of Missouri for any type of relief, be it monetary or injunctive. Furthermore, he has not demonstrated that an exception to sovereign immunity is present here. Therefore, for this reason as well, his claims against the St. Louis Psychiatric Center and the Missouri Department of Mental Health must be dismissed.

**B. Official Capacity Claims**

Plaintiff has sued all defendants in their official capacities. A suit against a state official in his official capacity is a suit against the official's office and is no different from a suit against the state itself. *Will*, 491 U.S. at 71.

In this case, defendants are alleged to be employed in various capacities by the State of Missouri. As such, the official capacity claims against them are treated as being made against their employer, the State of Missouri. To the extent that plaintiff is suing for monetary damages, the official capacity claims must be dismissed because the State of Missouri is not a "person" under 42 U.S.C. § 1983. *See Will*, 491 U.S. at 71 (explaining that "neither a State nor its officials acting in their official capacity are 'persons' under § 1983"); and *Kruger*, 820 F.3d at 301 (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). Likewise, a claim for monetary damages against a state official acting in an official capacity is barred by the Eleventh Amendment. *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment").

However, the Eleventh Amendment does not bar a plaintiff from suing a state official in their official capacity "if the plaintiff merely seeks injunctive or prospective relief for a legally cognizable claim." *Nix v. Norman*, 879 F.2d 429, 432–

18

33 (8th Cir. 1989), *citing Will*, 491 U.S. at 109 (state officials sued in their official capacities for injunctive relief are "persons" under section 1983 because official-capacity actions for prospective relief are not treated as actions against the state). Courts are permitted to "order injunctions to prevent or to remedy a state officer's conduct." *Id.* at 432.

"To establish liability in an official-capacity suit under section 1983, a plaintiff must show either that the official named in the suit took an action pursuant to an unconstitutional governmental policy or custom, [citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)] or that he or she possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner." *Nix*, 879 F.2d at 433.[5]  A plaintiff may establish a claim against a state official for injunctive relief if the alleged constitutional violation "resulted from (1) an official ... policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.,* 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

---

[5] The *Nix* Court specifically adopted the policy and custom standard from the *Monell* case which addressed claims against municipal government defendants.  As a result, the elements for custom and policy claims in cases against state officials may be analyzed though the lens of *Monell* and its progeny.

Policy refers to "official policy, a deliberate choice of a guiding principle or procedure made by the [governmental] official who has final authority regarding such matters." *See Corwin v. City of Independence, Mo.,* 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.,* 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [governmental entity's] governing body." *Angarita v. St. Louis Cty.,* 981 F.2d 1537, 1546 (8th Cir. 1992).

An unofficial custom claim is established by evidence of:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, a plaintiff can assert a liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the governmental entity "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.,* 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.,* 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.,* 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk,* 340 F.3d 605, 614 (8th Cir. 2003). In this case, plaintiff has not presented any facts supporting the proposition that the State of Missouri has harmed him due to an unconstitutional policy, custom, or failure to train.

First, plaintiff has not established the existence of an unconstitutional policy. While he has challenged the use of forced medications, he has presented absolutely no facts regarding the forced medication policy of the State of Missouri. Certainly, his assertions do not allow the Court to infer that such a policy is unconstitutional, either in its entirety or as applied to him. Rather than present allegations regarding a policy or the acts of policymakers, plaintiff's facts – such as they are – focus on the actions of individuals who he believes are medicating him for improper reasons.

Second, plaintiff has not demonstrated that he was harmed by an unconstitutional custom, as he has not shown the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the [State of Missouri's] employees," much less that policymakers were deliberately indifferent to or tacitly authorized such misconduct. Far from describing a "persistent pattern of unconstitutional misconduct," plaintiff's allegations do not adequately describe even a single instance in which a constitutional violation occurred.

Third, plaintiff has not properly alleged that the State of Missouri was deliberately indifferent in failing to train or supervise its employees. To show deliberate indifference, plaintiff must prove that the state "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Typically, this is done by alleging a "pattern of similar constitutional

violations by untrained employees." Plaintiff's facts do not show a repeated design utilized by defendants to violate his constitutional rights.

Finally, to the extent that plaintiff might seek to hold the State of Missouri liable for the actions of its employees, the Court notes that a governmental entity cannot be held liable under 42 U.S.C. § 1983 simply because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.,* 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a [governmental entity] ... cannot be liable on a respondeat superior theory").

For all the reasons discussed above, plaintiff has failed to state official capacity claims against defendants. Therefore, the official capacity claims must be dismissed.

## C. Individual Capacity Claims

Plaintiff has sued all the defendants in their individual capacities. Individual liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson,* 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing

plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

### i.     Forced Medication Under the Fourteenth Amendment

Plaintiff appears to allege two separate occasions where he believes he was forcibly medicated. He asserts that he was medicated by Dr. Jane Doe and Onterio Sheppard in early October of 2015 when Sheppard cuffed him to the bed. He also claims that he was forcibly medicated after he appealed the decision by Hayreh, Ramirez, and Wilson around October 13, 2015.[6]

The question as to whether a state may forcibly medicate a civilly committed individual has both substantive and procedural aspects. *See Washington v. Harper*, 494 U.S. 210, 220 (1990). "The substantive issue involves defining the protected constitutional interest, as well as identifying the conditions under which competing interests may outweigh it," while the "procedural issue concerns the minimum process required by the Constitution." *Morgan v. Rabun*, 128 F.3d 694, 696 (8th Cir. 1997). In other words, "the substantive issue is what factual circumstances must exist

---

[6]Plaintiff is a civilly committed individual and therefore protected by the Fourteenth Amendment. *See Karsjens v. Lourey*, 988 F.3d 1047, 1052 (8th Cir. 2021).

before the State may administer antipsychotic drugs to the prisoner against his will; the procedural issue is whether the State's nonjudicial mechanisms used to determine the facts in a particular case are sufficient." *Harper*, 494 U.S. at 220.

Regarding the substantive component, the Due Process Clause of the Fourteenth Amendment gives an individual "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." *Id.* at 221-22. As such, the state is permitted to treat a seriously mentally ill inmate with antipsychotic drugs against his will if the inmate is a danger to himself or others, and the treatment is in the inmate's medical interests. *Id.* at 227. *See also Morgan*, 128 F.3d at 697 (explaining that with regard to substantive due process, a committed individual's due process rights are not violated if he is a danger to himself or others).

An inmate may also be forcibly medicated "if he (1) suffers from a mental disorder and (2) is gravely disabled," which includes "severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety." *Green v. Dormire*, 691 F.3d 917, 923 (8th Cir. 2012) (determining that Missouri policy providing for forced medication of a "gravely disabled" inmate comported with substantive due process).

Allegations that forced medication was not in an individual's best interest may support a claim under 42 U.S.C. § 1983. *See Thomas v. Eschen*, 928 F.3d 709, 713

(8th Cir. 2019) (explaining that if state officials force a civilly committed individual to take drugs having no connection to his mental illness, or intentionally injure him while treating him, the individual may have a viable claim for damages under § 1983). However, more than "threadbare allegations" are required to support a claim. *Id*. at 714 (noting that plaintiff's claim that he had been "medicated" for the "wrong reasons" did not demonstrate "what, when, where, why, or how [the] drugs were administered").

To meet the procedural requirements of due process in the involuntary administration of antipsychotic drugs to a prisoner, there must be: (1) notice; (2) the right to be present at an adversarial hearing; (3) the right to present witnesses; and (4) the right to cross-examine witnesses. *See Harper*, 494 U.S. at 235. *See also Doby v. Hickerson*, 120 F.3d 111, 113 (8th Cir. 1997) (explaining that the "minimal constitutional requirements for satisfying procedural due process when a state involuntarily administers antipsychotics to a prisoner" consists of "an independent decisionmaker as well as for notice, the right to be present at an adversary hearing, and the right to present and cross-examine witnesses"); A judicial hearing is not required, and the hearing may be adjudicated by non-treating medical personnel. *Harper*, 494 U.S. at 231.

Though *Harper* dealt with a prison inmate, the same factors have been applied to civilly committed individuals who have been forcibly medicated. *See Morgan*,

128 F.3d at 696-97 (applying *Harper* factors to an individual committed to the Missouri Department of Mental Health). That is, the "governmental interests in running a state mental hospital are similar in material aspects to that of running a prison," as the state has "a vital interest in ensuring the safety of their staff, other patients, and of course in ensuring the patients' own safety." *Id*. at 697.

In this case plaintiff alleges that defendants Dr. Jane Doe, Onterio Sheppard, Davinder Hayreh, Amy Ramirez and Roy Wilson did not follow the proper procedural requirements of the forcible medication procedures. He claims in the first instance, relative to the early October incident, he was not provided notice of the forcible medication, the right to a hearing or the right to witnesses. Further, plaintiff states that when he objected to being medicated, he was drugged anyway.

With regard to the incident on October 13, 2015, he asserts that defendants knew they were violating his due process rights with regard to involuntarily medicating him by utilizing a non-psychiatrist second opinion, but they did so anyway. When he objected to the forcible medication and appealed the decision, he was still forcibly medicated.

Based on the aforementioned, the Court finds that plaintiff has alleged enough to set forth a claim for due process violations for his involuntary medication claims in 2015 against defendants Dr. Jane Doe, Onterio Sheppard, Davinder Hayreh, Amy Ramirez and Roy Wilson.

### ii.    No Personal Liability as to Defendants Javois and Vincenze

In this case, plaintiff asserts that Laurent Javois is the current Chief Executive Officer at SLPRC, and Felix Vincenze was the former Chief Organizational Officer at SLPRC. He claims, in conclusory manner, that defendants Vincenze and Javois were personally involved in the decision to forcibly medicate him. He has not, however, provided any facts regarding their purported personal involvement in the alleged events in this action. Because plaintiff alleges no harm by these defendants he has failed to state a claim for relief against them. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints"); *see also Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of *pro se* complaint against defendants who were merely listed as defendants in the complaint and there were no allegations of constitutional harm against them); *see Mayorga,* 442 F.3d at 1132 (explaining that 42 U..S.C. § 1983 liability "requires a casual link to, and direct responsibility for, the deprivation of rights"); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (claims sounding in respondeat superior are not cognizable under § 1983).

### iii.     Missouri State Law Assault Claim Against Onterio Sheppard

Plaintiff alleges that defendant Sheppard "assaulted" him by cuffing his arms and legs to the bed so that he could be forcibly medicated in early October 2015. The Court assumes that plaintiff is attempting to plead a cause of action for assault under Missouri state law. "To plead an assault, the [plaintiff] must allege: (1) defendant's intent to cause bodily harm or offensive contact, or apprehension of either; (2) conduct of the defendant indicating such intent, and (3) apprehension of bodily harm or offensive contact on the part of the plaintiff caused by defendant's conduct." *Devitre v. Orthopedic Center of St. Louis, LLC,* 349 S.W.3d 327, 335 (Mo.2011). Plaintiff has not alleged that defendant Sheppard had an intent to create bodily harm. Rather, plaintiff states that Sheppard was merely holding him down in order to forcibly medicate him. Thus, the Court finds that plaintiff's allegations do not indicate a state law assault claim in this instance.

### D. Plaintiff's Request for Release from Confinement

As part of his request for relief, plaintiff seeks immediate release from commitment. The Court notes that this request is not properly brought in a 42 U.S.C. § 1983 action. If he wishes to challenge his civil commitment, that challenge must be brought pursuant to a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and

the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus"). *See also Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (explaining that Supreme Court "has held that a prisoner in state custody cannot use a [ 42 U.S.C.] § 1983 action to challenge the fact or duration of his confinement"); and *Adams v. Agniel,* 405 F.3d 643, 644-45 (8th Cir. 2005) (explaining that a habeas action is the proper vehicle for a prisoner to challenge the legality of his sentence or seek immediate or speedier release). Therefore, to the extent that plaintiff is seeking release from his civil commitment, his request for such relief must be denied.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [3] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint regarding plaintiff's claims of violations of his due process rights under the Fourteenth Amendment due to his involuntary medication by defendants Dr. Jane Doe[7], Onterio Sheppard, Davinder Hayreh, Amy Ramirez and Roy Wilson. All except Dr. Jane Doe shall be served with summons,

---

[7]The Court is cognizant that plaintiff cannot yet identify Dr. Jane Doe. Plaintiff will be given thirty (30) days after initial disclosures to identify and file with the Court Dr. Jane Doe's identity so that she may be served.

in their individual capacities, at St. Louis Psychiatric Rehabilitation Center, 5300 Arsenal Street, St. Louis, Missouri 63139.

**IT IS FURTHER ORDERED** that, no later than thirty (30) days from the date of initial disclosures, plaintiff shall file a memorandum with the Court identifying Dr. Jane Doe by her proper name and the address at which she may be found for service of process.

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), defendants Onterio Sheppard, Davinder Hayreh, Amy Ramirez and Roy Wilson shall reply to plaintiff's claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to plaintiff's claims against Laurent Javois and Felix Vincenze in their individual and official capacities because, as to these claims against defendants, the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to plaintiff's claims against defendants in their official capacities because, as to these claims against defendants, the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to plaintiff's assault claim against defendant Onterio Sheppard because, as to this claim the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that an appeal of this Order of Partial Dismissal would not be taken in good faith.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 30th day of June, 2023.